UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                          |   |                              |
|--------------------------|---|------------------------------|
| JWAINUS PERRY,           | ) |                              |
|                          | ) |                              |
| Plaintiff,               | ) |                              |
|                          | ) |                              |
| v.                       | ) | Civil Action No. 12-12070-LTS |
|                          | ) |                              |
| LUIS S. SPENCER, et al., | ) |                              |
|                          | ) |                              |
| Defendants.              | ) |                              |

ORDER ON DEFENDANTS' MOTIONS TO DISMISS
FOR FAILURE TO STATE A CLAIM (DOC. NOS. 54 AND 69)

February 12, 2015

SOROKIN, J.

The plaintiff, Jawainus Perry, is an inmate in the custody of the Massachusetts Department of Correction ("DOC"). He has sued nine DOC officials and employees, bringing claims pursuant to 42 U.S.C. § 1983 alleging violations of his rights to due process and equal protection, and pursuant to Title II of the Americans with Disabilities Act ("ADA") alleging discrimination based on mental impairments.[1] See generally Doc. No. 51. The defendants have moved to dismiss the complaint. See Doc. Nos. 54, 70.[2] For the reasons that follow, the

---

[1]Perry is represented by counsel. He filed this action pro se in 2012, and subsequently amended his complaint on his own. See Doc. Nos. 1, 23. His amended complaint was dismissed by Judge Zobel, with leave to amend based on representations made in a brief filed by counsel, who entered her appearance after Perry filed his amended complaint. See Doc. Nos. 33, 50. Counsel then filed a second amended complaint, which is the relevant pleading now. Doc. No. 51. The Court will refer to this pleading as the "complaint" in the context of this Order.

[2]All defendants are represented by the same counsel. Six of the defendants moved to dismiss in June, 2014, before the remaining three defendants (newly named in the current complaint) had been served. Doc. No. 54; see Doc. No. 55 at 1 n.1, 4.

defendants' motions are ALLOWED in part and DENIED in part.

I.     BACKGROUND

Perry alleges that, after serving nearly seven years of a life sentence, he was removed from the general prison population in December 2010 and placed in a Special Management Unit ("SMU") at the Souza Baranowski Correction Center ("SBCC") on "awaiting action status" pending an investigation into whether he was a member of a "security threat group" ("STG"). Doc. No. 51 ¶¶ 18-20.  He claims this step was taken not based on a suspicion of recent gang-related activity nor any other disciplinary infraction, but due to a belief that his original criminal conviction arose from gang activity.  Id. ¶¶ 1, 20, 37.  According to Perry, this belief was incorrect, a fact which both he and his attorneys repeatedly attempted to demonstrate to various prison officials, including the individual defendants.  Id. ¶¶ 26, 36-47.  Those protestations went unheeded, though, and Perry remained in segregation – where he was alone in a prison cell for twenty-three hours each day, with strict limitations placed on recreation time, visits with friends and family, and property and canteen privileges – for a total of 611 days, first at SBCC and later at MCI-Cedar Junction.  Id. ¶¶ 1, 19, 35, 81-97.

That time was interrupted by a six-month transfer to an out-of-state facility, despite the fact that the direct appeal of Perry's criminal conviction was pending in Massachusetts before the Supreme Judicial Court ("SJC").  Id. ¶¶ 29-30, 70-72, 143.  His placement in the SMU also apparently coincided with a denial of certain mental health medication Perry alleges he requires – medication he claims became especially critical given the restrictive environment he endured during his long placement in segregation.  Id. ¶¶ 123-42.  Perry was returned to the general population in February 2013 and remains there today, but he claims the denial of his medications

continues. Id. ¶¶ 35, 196. He seeks a series of declarations and other forms of prospective relief related to his experience, as well as money damages. Id. at Prayer for Relief (a)-(k).

II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotations omitted). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A

court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense."  Id. at 679; accord Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Where, on the other hand, plaintiffs allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible," dismissal is not warranted.  Twombly, 550 U.S. at 570.

III.   DISCUSSION

The defendants seek dismissal of Perry's complaint in its entirety, citing a litany of reasons.[3]  The Court will address the viability of Perry's claims in the order they appear in his complaint.

In Count I, Perry brings a § 1983 claim for two violations of his due process rights. The first is what appears to be the heart of this case: a claim that Perry was unlawfully confined in non-disciplinary segregation for an unreasonable time without adequate process and for no legitimate purpose.  See Doc. No. 51 ¶ 186.  To state a due process claim such as this one, a plaintiff must allege state action which "imposes atypical and significant hardship on the inmate

---

[3]The defendants' motions in this relatively uncomplicated case spawned nearly 150 pages of briefing, with all parties contributing excessively lengthy pleadings.  The unnecessarily voluminous submissions could have been avoided by tailoring arguments and responses to this case (and to a fair reading of the current version of the complaint), and opting to join or incorporate previously filed briefs rather than resubmitting nearly identical papers and neglecting to advise the Court or opposing counsel of whether and how such papers differed from those previously filed.  The parties should not assume that the Court will allow future requests to file excess pages.

4

in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Perry plainly has alleged sufficient facts to make such a showing, particularly at this early stage in the proceedings.

Assuming the allegations in the complaint to be true and drawing all inferences in Perry's favor, he has described the following scenario. After serving nearly seven years of his sentence without involvement in any STG, Perry suddenly was placed in segregation based on an incorrect belief that his criminal charges – which arose nearly a decade earlier – were linked to gang activity. Although he had not been advised of this concern previously, he was told after his transfer to the SMU that it was too late to dispute the allegation. Numerous attempts by Perry and lawyers acting on his behalf to demonstrate his charges were not gang-related fell on deaf ears, and Perry languished in what was essentially solitary confinement for years, during which time he was deprived of his property, contact with family, access to legal materials, and necessary mental health medications.

The defendants might be correct that various of these facts, if viewed individually, would not constitute a constitutional violation. Viewed together, however, the Court has no trouble concluding that Perry has described the sort of "atypical and significant hardship" that warrants discovery related to his first due process claim.[4] See Tyree, 2010 WL 145882, at *12-13

---

[4]Furthermore, Perry has adequately alleged that the due process violation of which he complains implicates a liberty interest that was clearly established, such that qualified immunity is not a grounds for dismissal at this juncture. See Clark v. Clarke, No. 11-11490-RWZ, 2013 WL 1144901, at *6 (D. Mass. Mar. 18, 2013) (refusing to dismiss a due process claim brought by an inmate in "extra restraint status" for several years, finding the liberty interest implicated by such confinement was clearly established at the time, and denying the defendants' qualified immunity claim in that context); Tyree v. Weld, No. 93-12260-NG, 2010 WL 145882, at *15 (D. Mass. Jan. 11, 2010) (finding defendants' obligations to provide process for inmates in segregation were not clearly established in the 1990s, but noting that by the start of 2010 "the

(concluding plaintiffs describing similar segregation conditions had sufficiently alleged a deprivation of a liberty interest where the average plaintiff's "indefinite" assignment to segregation was "a striking 270 days"); see also Wilkinson v. Austin, 545 U.S. 209, 223-24 (2005) (finding a liberty interest in avoiding placement in state supermax prison based on a set of conditions, including limitations on human contact, twenty-three-hour-a-day confinement to a cell, and placement in such conditions for an indefinite duration, which "taken together . . . impose an atypical and significant hardship within the correctional context"). Accordingly, the defendants' motions to dismiss are DENIED with respect to this portion of Count I, insofar as the claim is brought against the individual defendants and seeks money damages.[5] To the extent Perry seeks declarations and injunctions, he has no standing to pursue such prospective relief due to the fact that he is no longer in segregation.[6] Since Perry may not seek money damages from

---

obligations of the state going forward have been clarified"); see also Tellier v. Fields, 280 F.3d 69, 83-85 (2d Cir. 2000) (finding administrative detention for more than 500 days implicated a clearly established liberty interest). The impact of the SJC's decision in LaChance v. Commissioner of Correction, 978 N.E.2d 1199 (Mass. 2012) – where at summary judgment qualified immunity was found to shield the defendants from liability on claims brought by an inmate who spent less than half as much time in segregation as Perry did – is a question to be resolved later in the proceedings.

[5]The complaint contains sufficiently specific factual allegations to put each individual defendant named in Count I on notice of the actions he or she allegedly took to condone or tacitly authorize Perry's unconstitutional confinement, of which each defendant allegedly had actual notice during the relevant time period. See Doc. No. 66 at 31-35 (summarizing the allegations as to each individual defendant).

[6]The relevant events here occurred while Perry was at SBCC and MCI-Cedar Junction; Perry is now at MCI-Shirley, and is no longer in segregation. See Doc. No. 51 ¶¶ 8, 19-35. Perry's suggestion that his life sentence means he might return to segregation at some point in the future and, thus, retains standing is based on speculation and is without support in the law. See Purvis v. Ponte, 929 F.2d 822, 824-25 (1st Cir. 1991) (finding claims for equitable relief moot where plaintiff was no longer incarcerated at the relevant jail); Wilson v. Brown, 889 F.2d 1195, 1196 (1st Cir. 1989) (noting "injunctive relief [was] not an appropriate remedy" where an inmate brought claims against Rhode Island prison officials based on events that occurred during

6

public officials except in their individual capacities, see Wilson, 889 F.2d at 1197, his due process claim is DISMISSED as to the defendants in their official capacities.

Count I also contains a second due process claim, this one alleging denial of access to the courts. See Doc. No. 51 ¶ 187. To proceed with such a claim, a plaintiff must allege that the specific deprivations of which he complains caused him an actual, independent injury. See Sowell v. Vose, 941 F.2d 32, 34-35 (1st Cir. 1991) (per curiam) (requiring "actual injury" unless an "absolute denial of access to all legal materials, . . . a law library[,] or [any] other basic form of legal assistance" is asserted, which is not the case here). Perry has not alleged such injury.

He claims his temporary transfer to Connecticut from March until September 2012 deprived him of access to prison staff and legal materials that would have aided him in filing papers in Massachusetts courts to further his pending direct appeal and motion for a new trial, and he claims his lawyer was unable to visit him in Connecticut. Doc. No. 51 ¶¶ 145-49. The fact remains, however, that Perry had counsel representing him in his pending state proceedings at all times relevant to this case. The dockets related to his direct appeal to the SJC and his pending motion for a new trial in the Suffolk Superior Court reflect that his lawyer filed a motion seeking funds to hire an investigator and submitted several status reports regarding her work on Perry's case while Perry was in segregation.[7] Doc. Nos. 55-1, 55-2 (including one status report

---

time he served in jail in Rhode Island, but where at the time of the lawsuit the inmate was incarcerated in Massachusetts).

[7]The dockets were not attached to Perry's complaint, but the defendants have submitted them as exhibits to their motions. The Court may consider the dockets in resolving the pending motions to dismiss because they are public records, the authenticity of which are not in dispute, and they are essentially incorporated into Perry's complaint by his repeated references to those proceedings, which are at the heart of his access-to-courts claim. See Watterson, 987 F.2d at 3.

7

while Perry was in Connecticut).

Moreover, the dockets demonstrate that the SJC stayed Perry's direct appeal in early 2007 so that the Superior Court could consider Perry's motion for a new trial, and the direct appeal remains stayed today. See Doc. No. 55-1 (reflecting via entries regarding numerous status reports filed by Perry's counsel, who is rewriting the motion for a new trial, that litigation of the motion has been delayed to review ballistics evidence and interview a new witness, among other reasons). Proceedings in the Superior Court have been pending since Perry's pro se motion for a new trial was filed in late 2006, as his counsel works to prepare an amended motion to file on his behalf. See Doc. No. 55-2 at 12-13 (showing counsel obtained funds in 2007 for a ballistics expert, the expert's report was completed in 2008, a potential witness was identified in 2009, and counsel obtained funds for an investigator in 2011). Although both pending matters appear to be stalled, the dockets do not demonstrate that Perry's temporary transfer to Connecticut had any impact on either matter. Instead, the dockets reflect the same sort of activity – a series of status reports without actual litigation occurring – for several years before Perry's placement in segregation.

More importantly, the dockets show that both matters remain pending, and presumably both state courts will address the questions before them – the direct appeal in the SJC, and the motion for a new trial in the Superior Court – when the matters become ripe.[8] Under these circumstances, Perry has not alleged the sort of actual injury necessary to pursue an access-to-

---

[8]Should either state court dismiss Perry's claims or otherwise refuse to consider them due to delay that Perry can attribute to his segregation or his transfer to Connecticut, perhaps an access-to-courts claim might then accrue. Now, however, the record demonstrates delayed proceedings, not denial of access to any court.

courts due process claim.[9] Thus, insofar as Count I states such a claim, the defendants' motions to dismiss are ALLOWED and that portion of Count I is DISMISSED.

In Count II, Perry asserts another due process claim pursuant to § 1983, this time alleging his right to due process was violated when he was denied counsel at the classification hearing which resulted in the decision to transfer him to Connecticut. Doc. No. 51 ¶¶ 190-91. This claim rests on the suggestion that Perry has a liberty interest arising from DOC regulations permitting counsel to appear at such classification hearings. Id. Although due process claims relying on theories like this one were once plentiful, "Sandin shifted the focus of a court's inquiry [as to whether a liberty interest is implicated] from the language of state regulations to the magnitude and nature of the loss suffered by the prisoner." Tyree, 2010 WL 145882, at *7; accord Wilkinson, 545 U.S. at 223. Here, the critical harm alleged by Perry was his prolonged and allegedly unjustified exposure to harsh segregation conditions. But that harm did not flow from counsel's absence at the classification hearing preceding Perry's out-of-state transfer,

---

[9]In describing his damages, Perry alleges his time in segregation exacerbated his mental illness and rendered him unable to assist counsel. Doc. No. 51 ¶ 183. In his opposition brief, Perry goes further and suggests this continues to delay his pending state court proceedings. See Doc. No. 66 at 22 n.12. Assertions in Perry's brief that are not contained in his complaint cannot save his claim from dismissal. To the extent he intended to allege that his inability to assist counsel rises to the level of an "actual harm" for purposes of his access-to-courts claim, that view is belied by other facts set forth in Perry's complaint. See Doc. No. 51 at ¶ 63 (describing a letter Perry sent in December 2012, after two years in segregation and after his return from Connecticut, expressing concerns about the conditions of his confinement and requesting a transfer to a facility in Maine where he would be able to conduct legal research using a computer); id. ¶ 164 (describing a December 2012 grievance he filed, in which he cited relevant caselaw and challenged the conditions and length of his confinement, and noting he exhausted his claims by filing an administrative appeal in January 2013). This is not to say Perry cannot claim his extended placement in segregation caused his mental condition to deteriorate; such an assertion, however, is appropriately viewed as an allegation of damages flowing from his primary due process claim, rather than a basis for a separate access-to-courts claim.

9

which occurred after he had been in segregation for a full year. The same lawyer had written on several occasions to various defendants objecting to the conditions of Perry's confinement before the classification hearing, and she continued to send such objections after the hearing. Perry does not allege his transfer to Connecticut would have been avoided if counsel had been present for the hearing, nor would the record plausibly support such an allegation.

The only harms Perry does allege related to his temporary transfer to Connecticut – e.g., inability to access a law library with Massachusetts-specific materials, and inability to meet in person with his counsel – are not the sorts of losses that implicate a liberty interest sufficient to support a constitutional claim.[10] Cf. Wilkinson, 545 U.S. at 223-24 (finding indefinite placement in segregation where "almost all human contact is prohibited," lights are left on at all times, exercise is strictly limited, and parole consideration is eliminated is the sort of hardship that gives rise to a liberty interest under the Sandin standard). As such, the defendants' motions are ALLOWED with respect to Count II, which is DISMISSED.

Count III asserts a § 1983 claim arising from an alleged equal protection violation. Perry essentially claims that by placing him in non-disciplinary segregation, the defendants treated him differently than other similarly situated inmates – specifically, designated STG members and

---

[10]Perry also claims the law firm tasked with advising inmates in the Connecticut prison rejected his request for assistance with his Massachusetts proceedings. Although the letter he attaches to his complaint does reflect that the Connecticut lawyer declined to offer legal advice due, in part, to unfamiliarity with Massachusetts local rules, the letter also demonstrates that the attorney provided Perry with a list of Massachusetts counsel who might be willing and able to assist him, and also included guidance on how to use the list and what to say when contacting lawyers on it. See Doc. No. 51-8. Although it is unclear why Perry was seeking legal assistance from someone other than his counsel of record in the Massachusetts appeal, the record simply does not support a plausible claim that Perry was denied meaningful access to counsel while in Connecticut.

other inmates in long-term non-disciplinary segregation. See Doc. No. 51 ¶¶ 165-74, 193 (alleging most known and suspected STG members reside in general population, and other inmates in similar segregation were permitted to retain more property than Perry). Because Perry does not allege he is a member of a protected class and is instead alleging more general "selective treatment," his equal protection claim requires him to demonstrate that "'compared with others similarly situated, [he] was selectively treated; and . . . that such selective treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [him].'" Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995)). Without the latter requirement – a showing of improper purpose or bad faith – nearly every administrative decision, whether in a prison or elsewhere, could spawn a federal action alleging an equal protection violation.

Here, Perry has not alleged any facts that would support a finding of bad faith or improper purpose. In his opposition brief, Perry alleges he has satisfied this requirement by alleging he was threatened, beaten after a hunger strike,[11] deprived of medications, and prohibited from possessing his legal documents. Doc. No. 66 at 26. He suggests all of this occurred because he "requested due process" and due to the defendants' "malicious and bad faith intent to injure him mentally and emotionally." Id. at 26-27. However, nowhere in his complaint (which exceeds 200 paragraphs in length) does he allege receiving any threats from anyone, let alone any defendant. Nor does he assert any facts to support a plausible claim that

---

[11]He does not allege any of the named defendants participated in or authorized his beating.

11

his alleged beating, denial of medications, or limited legal materials were the result of any defendant's desire to punish him for requesting a hearing or filing a grievance, or were driven by a general bad faith intent to selectively harm him. Summarily suggesting such motivations, without alleging facts that might reasonably demonstrate them, is not sufficient to transform the stuff of routine prisoner grievances into a federal civil rights claim. With respect to Count III, then, the defendants' motions to dismiss are ALLOWED.[12]

Perry brings his final claim pursuant to Title II of the ADA. He alleges the defendants, acting in their official capacities on behalf of the DOC, "discriminated against [him] as a mentally disabled prisoner by failing to provide him with reasonable accommodation of necessary medication, and housing outside of long-term solitary confinement." Doc. No. 51 ¶ 201. Title II prohibits disability discrimination by public entities, including state prisons and their officials. 42 U.S.C. §§ 12131(1)(B), 12132. To state a plausible claim under Title II, a plaintiff must allege:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).

The defendants implicitly concede the first element for purposes of their motions to dismiss. See Doc. No. 55 at 32. Perry's problem arises with respect to the remaining two elements. Even assuming that the alleged denial of certain medication or the failure to offer

---

[12]Because defendant Toolin is named only in Counts II and III, both of which are dismissed, he is hereby dismissed as a party to this action.

Perry housing outside of non-disciplinary segregation during the relevant time period constituted the sort of exclusion from or denial of benefits necessary to satisfy the second element of a Title II claim – and this assumption is a generous one – Perry has offered only conclusory averments, supported by no specific facts, to suggest that such actions were taken "by reason of" his mental illness.  See, e.g., Doc. No. 51 ¶¶ 123-42 (alleging Perry was denied Ritalin and Concerta based on a prison policy not to provide those drugs "because other inmates are abusing the medications"); id. ¶¶ 201-03 (summarily asserting the defendants' actions "constitute discrimination against Perry on the basis of his disability").  Such "threadbare recitals" are insufficient to avoid dismissal.  Iqbal, 556 U.S. at 678.  Perry does not claim that he was uniquely denied the relevant medications due to his mental impairments, but that the DOC had a policy preventing all inmates from receiving the medications for any reason due to a general concern that the drugs would be abused.  Regardless whether such a policy is justified or medically sound, Perry has not articulated an ADA claim where he has failed to assert any facts that might plausibly support a finding of discrimination against him ***on the basis of*** his alleged disability.

Perry attempts to transform his denial of medications and/or his lengthy stay in segregation into an ADA claim by asserting he sought the medications and a less restrictive housing environment as "reasonable accommodations" for his mental illness.  See Doc. No. 66 at 30.  Title II obligates DOC officials "to make 'reasonable accommodations' to allow [a] disabled person access to [prison] services or participation in programs or activities," but it does not require them "to employ any and all means to make services available to persons with disabilities."  Bibbo v. Mass. Dept. of Corr., No. 08-10746-RWZ, 2010 WL 2991668, at *1 (D.

13

Mass. July 26, 2010) (citation omitted). They need only provide "meaningful access to the program or services sought." Id. (internal quotations omitted). Perry's "reasonable accommodation" claim fails under this standard because he has not identified "the program or services sought." Cf. United States v. Georgia, 546 U.S. 151, 154-55 (2006) (involving paraplegic inmate who challenged prison facilities that were not wheelchair accessible, including toilets, showers, and his cell, which was too small to permit him to turn his wheelchair around); Bibbo, 2010 WL 2991668, at *1 (involving a triplegic inmate who requested a motorized wheelchair so that he could seek employment in prison and participate in various prison programs such as "basic orientation"). The general harms he does allege, such as inability to focus, difficulty with impulse control, trouble concentrating, worsening mental health, and inability to assist counsel with his pending appeal, do not plausibly implicate a prison program or activity that he has been denied.[13] Doc. No. 51 ¶¶ 131, 134, 137, 176, 182; see also id. ¶ 182 (alleging unspecified "difficulty . . . performing daily life activities"). To the contrary, some of his allegations demonstrate he was permitted access to various prison services, such as its administrative complaint process and mental health services. See id. ¶¶ 154-64 (detailing Perry's various grievances and their appeals); id. ¶¶ 179-80 (referencing mental health services and monitoring which Perry was receiving during the relevant time period).

Under these circumstances, Perry has not stated a plausible ADA claim. The defendants'

---

[13]All of these harms, though, are properly viewed as damages allegedly flowing from the claim that is at the heart of this case – the due process violation articulated in Count I which survives the defendants' motions to dismiss.

motions to dismiss are ALLOWED with respect to Count IV, which is DISMISSED.[14]

IV. CONCLUSION

The circumstances described in the complaint, if true, may warrant a finding that Perry suffered the sort of atypical and significant hardship – i.e., nearly two years in non-disciplinary segregation for no legitimate reason and without any meaningful process at all – from which the due process clause protects prison inmates. Although the remaining claims are dismissed for the reasons set forth above, Perry's complaint sets forth sufficient factual allegations to warrant discovery on that due process claim.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[14]Because defendant Mici is named only in Counts III and IV, both of which are dismissed, she is hereby dismissed as a party to this action.